No. 24-1912

---

In the United States Court of Appeals
for the Sixth Circuit

————————

# United States of America,

Plaintiff-Appellee,

v.

# Jeremy David McCallum,

Defendant-Appellant.

————————

On Appeal from the United States District Court
for the Eastern District of Michigan – Flint
No. 21-cr-20088 (Hon. F. Kay Behm)

————————

## Brief for the United States

————————

Julie A. Beck
Acting United States Attorney

Christopher Rawsthorne
Assistant United States Attorney
Eastern District of Michigan
600 Church Street, Suite 200
Flint, MI 48502
(810) 766-5032
Christopher.Rawsthorne@usdoj.gov

# Table of Contents

Table of Authorities ................................................................................. ii

Oral Argument Is Unnecessary ............................................................ iv

Introduction ........................................................................................... 1

Issues Presented .................................................................................... 2

Statement of the Case .......................................................................... 3

Summary of the Argument ................................................................. 10

Argument .............................................................................................. 11

I.   The district court properly scored McCallum's guideline
     range. ........................................................................................... 11

     A.   The district court did not clearly err in finding that the
          minor victims were in McCallum's care, custody, or
          supervisory control for purposes of an enhancement
          under USSG § 2B2.1(b)(5) ................................................... 11

     B.   The district court correctly determined that McCallum
          is a repeat and dangerous sex offender for purposes of
          USSG § 4B1.5(b) .................................................................. 14

     C.   Any error assessing the enhancements was harmless ......... 17

II.  McCallum's sentence was eminently reasonable. ......................... 18

Conclusion ........................................................................................... 20

Certificate of Service ........................................................................... 21

i

# Table of Authorities

## Cases

*United States v. Abdalla*, 972 F.3d 838 (6th Cir. 2020) ........................ 11

*United States v. Al-Cholan*, 610 F.3d 945 (6th Cir. 2010) ..................... 15

*United States v. Blackbird*, 949 F.3d 530 (10th Cir. 2020) ................... 13

*United States v. Blue*, 255 F.3d 609 (8th Cir. 2001) .............................. 13

*United States v. Brattain*, 539 F.3d 445 (6th Cir. 2008) ....................... 15

*United States v. Faulkner*, 926 F.3d 266 (6th Cir. 2019) ...................... 17

*United States v. Hixson*, 636 F. App'x 300 (6th Cir. 2016) .................... 14

*United States v. Jenkins*, 821 F. App'x 504 (6th Cir. 2020) .................. 17

*United States v. Martin*, 291 F. App'x 765 (6th Cir. 2008) .................... 12

*United States v. Paauwe*, 968 F.3d 614 (6th Cir. 2020) ........................ 15

*United States v. Pruitt*, 999 F.3d 1017 (6th Cir. 2021) .......................... 11

*United States v. Ralston*, 110 F.4th 909 (6th Cir. 2024) ....................... 18

*United States v. Rayyan*, 885 F.3d 436 (6th Cir. 2018) ........................ 18

*United States v. Sanderson*, No. 21-5900, 2022 WL 1133114
    (6th Cir. Apr. 18, 2022) ................................................................. 12

*United States v. Taylor*, 85 F.4th 386 (6th Cir. 2023) ........................... 11

*United States v. Wandahsega*, 924 F.3d 868 (6th Cir. 2019) ................. 15

**Statutes**

18 U.S.C. § 2251 ............................................................. 4, 14, 16

18 U.S.C. § 2252A(a)(5)(B) ........................................................ 4

18 U.S.C. § 3553 ........................................................ 8, 18, 19

**Guidelines**

USSG § 2B2.1(b)(5) ....................................................... 11, 17

USSG § 2G2.1(b)(5) ........................................................ passim

USSG § 4B1.5(b) ........................................................... passim

USSG § 4B1.5, cmt. n. 2(A)(ii) ................................................ 15

USSG § 4B1.5, cmt. n. 4(B) ................................................... 15

## Oral Argument Is Unnecessary

The issues presented in this sentencing appeal are relatively simple. Therefore, "the decisional process would not be significantly aided by oral argument." Fed. R. App. P. 34(a)(2)(C).

# Introduction

McCallum sexually exploited three minors, terrorizing them and subjecting one victim to near-nightly sexual assaults for years. His house contained videos and photographs documenting decades of this abuse. In the end, McCallum pleaded guilty to eleven counts relating to his sexual exploitation of children and possession of child pornography. The district court sentenced him to 85 years in prison, a significant downward variance. McCallum appeals, claiming that two enhancements were improperly scored and that his sentence is unreasonably long. McCallum's arguments are unavailing, and his sentence should be affirmed.

# Issues Presented

I.    The district court applied a two-point enhancement under USSG § 2G2.1(b)(5) based on its finding that the minor victims were in McCallum's care, custody, or supervisory control and a five-point enhancement under USSG § 4B1.5(b) based on its conclusion that McCallum qualifies as a repeat and dangerous sex offender. Did the court err, clearly or otherwise, in applying those enhancements and, regardless, would any error have been harmless?

II.    Is McCallum's 85-year sentence—which is 205 years below his guideline range—substantively reasonable?

## Statement of the Case

### A. A search of McCallum's home reveals that he had been sexually abusing children for years and recording the abuse.

After receiving a report that McCallum had numerous disturbing items in his home, including likely child pornography, law enforcement obtained a warrant and conducted a search. (R. 131: PSR, 636, ¶ 13).

McCallum's house was a veritable house of horrors. Officers saw baby dolls with sex toys inserted in their genital areas, dirty diapers stored in a refrigerator, and magazine cut-outs of children in bathing suits. (*Id.*, 636, ¶ 14). There were pairs of children's underwear, masks, books discussing the abuse of children, sex toys, and a drawing of a naked child. (R. 133: Gov. Sent. Mem., 673–77). Officers also found VHS tapes, a DVD, and printed photographs depicting the sexual abuse and exploitation of young children. (R. 131: PSR, 637, ¶ 15). Law enforcement eventually identified MV-1, MV-2, and MV-3 as victims.

In a forensic interview, MV-1 recounted years of abuse at McCallum's hands. (*Id.*, 637–38, ¶¶ 16–21). McCallum was MV-1's mother's boyfriend. The first night that MV-1 stayed at his house when she was four years old, he threatened her with a firearm and sexually assaulted her. (*Id.,* 637, ¶ 16). That night began years of abuse. (*Id.*,

¶¶ 16–21). McCallum assaulted her and recorded the abuse more times than she could remember. (*Id.*, 637, ¶¶ 17, 19–21).

MV-2, a half-sister of MV-1, described a pattern of horrific abuse that began when she was six years old. (*Id.,* 638, ¶¶ 22–24). But as video recordings revealed, the abuse began much earlier—when she was an infant. (R. 77: Second Superseding Indictment, 306; R. 133, Gov. Sent. Mem., 678; R. 131: PSR, 640, ¶ 36).

MV-3 was the child of one of McCallum's other girlfriends. MV-3 reported sexual abuse by McCallum when he was 9–10 years old. (R. 131: PSR, 638, ¶ 25). MV-3 recounted that McCallum recorded the abuse, and investigators found that recording on one of McCallum's VHS tapes. (*Id.*, 638, ¶ 25; R. 77: Second Superseding Ind., 307; R. 133: Gov. Sent. Mem., 679).

## B.  McCallum pleads guilty and is sentenced to 85 years in prison.

McCallum was indicted on ten counts of child exploitation, in violation of 18 U.S.C. § 2251, and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (R. 77: Second Superseding Ind., 302–309). McCallum pleaded guilty to all charges, without a plea agreement. (R. 131: PSR, 636, ¶ 11).

The presentence report separated McCallum's offenses into six groups. (*Id.*, 641–645, ¶¶ 46–101). Numerous enhancements applied to each group, and McCallum objected to several. (*Id.*, 645, ¶ 98).

As relevant here, he objected to an enhancement under USSG § 2G2.1(b)(5), which applies if the minor victim was in the defendant's care, custody, or supervisory control. He also objected to an enhancement under § 4B1.5(b), which applies to repeat and dangerous child sex offenders. Both objections were rejected. (*Id.*, 660–62).

At sentencing, McCallum persisted with his objections. With respect to USSG § 2G2.1(b)(5), he argued that being the boyfriend of the mothers of the victims did not mean that he had care, custody, or control of the victims. (R. 157: Sent. Tr., 1125). McCallum himself interjected with an unsupported and unsolicited statement alleging that a minor victim's mother held the camera at some point. (*Id.*, 1126). He also argued—without any reference to any specific evidence—that the mothers of the minor victims knew of the abuse. (*Id.*, 1127). As to the USSG § 4B1.5(b), McCallum argued that it should not apply because he did not have any prior convictions. (*Id.*, 1130). He acknowledged that

his guideline range would be life, even without the disputed enhancements. (*Id.*, 1128, 1130–31).

The district court overruled the objections. As the court explained, § 2G2.1(b)(5) applied because (1) all the victims were identified as children of McCallum's girlfriends; (2) the only mention of anyone else's involvement was McCallum's unsolicited claim in court; (3) more than one person could have care, custody, or control of a child at a given time; (4) the assaults happened in his home; and (5) the minors were at least temporarily entrusted in his care. (*Id.*, 1129). Relying on an application note to § 4B1.5(b), the district court concluded that McCallum engaged in a pattern of activity involving prohibited sexual conduct and that his offense conduct here could be considered. (*Id.*, 1132).

The district court determined that the guideline range was life, which was then restricted to 3,480 months (290 years), the aggregate maximum sentence for all counts. (R. 157: Sent. Tr., 1133). McCallum sought a 25-year sentence, emphasizing his own victimization through prior abuse, and he pointed to sentences in other cases for comparison. (R. 132: McCallum Sent. Mem., 663–69; R. 157: Sent. Tr., 1134–39). McCallum himself spoke "to the children that [he] loved long ago." (*Id.*,

1140). He said that he was sorry "if they have bad memories" and thought at the time that he was "making their life so much better." (*Id.*). He claimed to have loved the affection of his own "so-called attacker." (*Id.*). He also said that he "f[e]ll in love with MV-1 and MV-2," but he accepts now that this was wrong. (*Id.*).

MV-1 told the court that McCallum was a monster who did not love her and instead abused her for eight years. (*Id.*, 1141–42). MV-1 could remember McCallum's first night of abuse—what she wore, how he talked to her, and the threat he made about harming her sister. (*Id.*, 1143–44). She recounted moving into his house, attempting to mentally escape the abuse, and eventually wishing that she would die. (*Id.*, 1444). She told the court about a time when he beat her until she blacked out, only for him to wake her up that night and anally rape her. (*Id.*, 1445.). She lamented that he stole her childhood and sense of innocence, and she felt sad that she could not prevent the abuse of her little sister, MV-2. (*Id.*, 1448). MV-2 told the court that her "life has been ruined in different ways," that McCallum's abuse stops her "from relationships, or even having a family," and that he's what causes her to "question [her] life day by day." (*Id.*, 1143).

The government sought a bottom-of-the-guidelines sentence of 290 years in prison. It argued that McCallum's apology to his victims for the "bad memories" that they "might have" demonstrated a lack of remorse. (*Id.*, 1449–50). Taking issue with McCallum's claim that he loved the victims, the government countered that a person does not point a gun, threaten, or anally rape those that he loves. (*Id.*). It argued that this case was exceptional, even within the category of child sexual exploitation cases. (*Id.*, 1150).

The district court, turning to the 18 U.S.C. § 3553 factors, commented on the serious nature of McCallum's crimes: his abuse spanned 20 years, MV-2 was only six months old when he began assaulting her, he kept the photographs and videos for decades, and he had other disturbing items in his home. (*Id.* 1155–56). As for his history and characteristics, the court noted that McCallum was a lifelong resident of Michigan, was himself sexually abused as a child, had a sexual interest in children from a young age, and had three adult children. (*Id.*, 1156). The court reasoned that a significant prison term was needed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. (*Id.*). The district court also

recognized that McCallum's "abhorrent behavior displays a complete lack of regard for the well-being of these children," again warranting a serious sentence. (*Id.*, 1156). Noting that McCallum "beat" his minor victims, "raped them," and "ruined their lives in many ways," the court "applauded them for surviving." (*Id.*, 1158). McCallum's asserted belief that he was making the victims' lives better made the court "sick to [its] stomach." (*Id.*). The court was struck by McCallum's lack of remorse and viewed this case as different than any child molestation case that it had considered. (*Id.*, 1159–60). Given all these considerations, the court sentenced McCallum to a total of 85 years in prison, a significant downward variance. (*Id.*, 1160–62).

# Summary of the Argument

The district court did not err, clearly or otherwise, in scoring the guidelines. An enhancement under § 2G2.1(b)(5) applied because the minor victims were left in McCallum's care while he was their mothers' boyfriend. The nature and duration of the abuse could not occur without some level of supervisory control. McCallum also qualified for an enhancement under § 4B1.5(b) as a repeat and dangerous sex offender because his convictions here constituted a pattern of prohibited sexual conduct. Regardless, his guideline range is the same even without the disputed enhancements, so any error was harmless.

The district court imposed a substantively reasonable sentence for truly horrific crimes. McCallum's conduct included the nightly rape of a child and the production of child pornography of an infant. The abuse went on for years and involved multiple victims, whom he gained access to through a position of trust. He showed no remorse and even claimed that he fell in love with two of his victims. McCallum's guidelines were 290 years. And his offenses here were more concerning than any child molestation case that the district court had ever seen. McCallum's below-guideline sentence of 85 years should be affirmed.

# Argument

## I. The district court properly scored McCallum's guideline range.

Whether a district court properly applied a sentencing enhancement is a matter of procedural reasonableness." *United States v. Taylor*, 85 F.4th 386, 388 (6th Cir. 2023). Generally, this Court "reviews factual findings for clear error and legal conclusions de novo." *United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020). Although the standard when reviewing the district court's application of an enhancement to the facts in a given case is "somewhat murky," at a minimum, review "should be deferential." *United States v. Pruitt*, 999 F.3d 1017, 1019–20 (6th Cir. 2021) (internal quotation marks omitted).

### A. The district court did not clearly err in finding that the minor victims were in McCallum's care, custody, or supervisory control for purposes of an enhancement under USSG § 2B2.1(b)(5).

Section 2G2.1(b)(5) provides for a two-level enhancement when the victim was in the defendant's care, custody, or supervisory control. In making this determination, courts "look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship." USSG § 2G2.1(b)(5) cmt. n.5(A). The guideline commentary also states that "teachers, day

care providers, baby-sitters, or other temporary caregivers are among those who would be subject to this enhancement." *Id.*

The enhancement "is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently." *Id.* § 2G2.1 cmt. n.5(A). An official parent-child relationship is not required. In *United States v. Sanderson*, No. 21-5900, 2022 WL 1133114 (6th Cir. Apr. 18, 2022), for example, this Court determined that the enhancement can apply even when a victim is never exclusively left alone with the defendant and that multiple individuals can have supervisory control over a victim at once. *Id.* at *5. The enhancement has also been applied to a photographer who had minors entrusted in his care for just hours at a time. *United States v. Martin*, 291 F. App'x 765, 768 (6th Cir. 2008).

The district court did not clearly err in finding that McCallum's victims were in his care, custody, or control under § 2G2.1(b)(5). Infants and toddlers cannot care for themselves. The years of abuse outlined by MV-1 demonstrates, at a minimum, that McCullum had some form of temporary custody or control over her. He dated her mother, she stayed frequently at his house, and was sent to live with him. (R. 131: PSR,

637–38, ¶¶ 16–21; R. 133-1: Gov. Sent. Mem. Ex. A, 689–91). For the district court to decide that McCallum had no custody or control over MV-1 during an eight-year period of abuse that began when she was four years old would defy all common sense. For MV-2 and MV-3, he had a similar role as the boyfriend of their mothers. (R. 131: PSR, 638, ¶¶ 22–25). McCallum was the subject of child protective services complaints related to MV-2, demonstrating that he played some supervisory role. (*Id.*, ¶ 24). On this record, the court reasonably found that McCallum abused his position of authority as the boyfriend of his victims' mothers to gain access to and control over vulnerable children.

This case is not comparable to *United States v. Blackbird*, 949 F.3d 530 (10th Cir. 2020), which involved a single incident of abuse against a teenager by a grandfather who was not allowed to live in the residence. It's also distinguishable from *United States v. Blue*, 255 F.3d 609 (8th Cir. 2001), which involved a single sexual assault against a minor while the minor's mother was passed out. Here, by contrast, McCallum's ongoing intimate relationship with the victims' mothers put him in a position to abuse the victims while they were entrusted in his

care. The record is more than sufficient to support the district court's finding that the circumstances fit the criteria of § 2G2.1(b)(5).

Whether to hold an evidentiary hearing is generally reviewed for abuse of discretion. *United States v. Hixson*, 636 F. App'x 300, 303 (6th Cir. 2016). But here, McCallum never requested one. And in any case, the record was sufficiently developed for the court to make an informed decision. The presentence report outlined the nature and duration of McCallum's relationships with the victims' mothers, the persistence of the abuse, and the locations where the assaults occurred.

**B. The district court correctly determined that McCallum is a repeat and dangerous sex offender for purposes of USSG § 4B1.5(b).**

McCallum next claims that he does not qualify for an enhancement as a repeat and dangerous sex offender under USSG § 4B1.5(b). But his arguments defy the plain reading of the guideline and have already been rejected by this Court on multiple occasions. The guideline states that when "the defendant's instant conviction is a covered sex crime," a five-point enhancement applies when the defendant "engaged in a pattern of activity involving prohibited sexual conduct." USSG § 4B1.5(b). A violation of 18 U.S.C. § 2251 is a covered

sex crime, McCallum pleaded guilty to ten such crimes, and he does not argue otherwise. USSG § 4B1.5, cmt. n. 2(A)(ii).

The dispute instead concerns what qualifies as "a pattern of activity involving prohibited sexual conduct," which the application note defines as "engag[ing] in prohibited sexual conduct with a minor" "on at least two separate occasions." USSG § 4B1.5, cmt. n. 4(B). An occasion may be considered regardless of whether the conduct occurred during the course of the instant offense and regardless of whether there was a conviction for that conduct. *Id*. Thus, McCallum qualifies despite that he had no conviction prior to this case.

This Court has already rejected challenges identical or similar to McCallum's. It upheld application of the enhancement where the defendant had no prior conviction but admitted to acts that would qualify. *United States v. Al-Cholan*, 610 F.3d 945, 955 (6th Cir. 2010). On several other occasions, this Court has upheld application of the enhancement where the basis of the challenge was that all the acts involved a single victim. *United States v. Paauwe*, 968 F.3d 614, 618 (6th Cir. 2020); *United States v. Brattain*, 539 F.3d 445, 447 (6th Cir. 2008); *United States v. Wandahsega*, 924 F.3d 868, 886 (6th Cir. 2019).

The analysis is straightforward. McCallum pleaded guilty to ten counts of violating 18 U.S.C. § 2251, the statute prohibiting the enticement of a minor to engage in sexually explicit conduct for the purpose of producing child pornography. The plea to those counts, involving three different victims at different times, alone qualifies him under the plain language of USSG § 4B1.5(b) and its commentary. (R. 77: Second Superseding Ind., 302–309). McCallum's numerous other sexual assaults of children and his uncharged acts of producing child pornography would also qualify to support the enhancement.

McCallum argues that "[a]side from the conduct for which McCallum was convicted, the children made only vague allegations of what happened at other times." (McCallum Br. at 25). This ignores the fact that the conduct for which he was convicted—ten counts of sexual exploitation of children—alone qualifies McCallum for the enhancement. And McCallum's secondary point, that the victims made only "vague allegations regarding other conduct," is belied by the record. For example, MV-1 described, in painful detail, McCallum pointing a gun at her sister before the first assault and telling her she would lose her sister if she told anyone. (R. 131: PSR, 637, ¶ 16). She

then described McCallum performing oral sex on her immediately after that, when she was four years old. She also graphically described McCallum's many sexual assaults, including the time that he anally raped her when she was eleven years old, causing her to bleed. (*Id.*, ¶ 19). MV-2 likewise provided detailed accounts of McCallum's sexual assaults against her. (*Id.*, 638, ¶¶ 22–24). McCallum's objection lacks merit, and he is exactly the type of repeat and dangerous sex offender that should receive this enhancement.

### C.     Any error assessing the enhancements was harmless.

"Errors that do not affect the ultimate Guidelines range or sentence imposed are harmless and do not require resentencing." *United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019). In *United States v. Jenkins*, 821 F. App'x 504 (6th Cir. 2020), this Court determined that any error in applying an enhancement was harmless because the guidelines would still be life imprisonment and the defendant, even if he won, would up "end up right back where he started." *Id*. at 509. Here, as in *Jenkins*, the guidelines would remain life imprisonment even with both enhancements removed. (R. 131: PSR, 645, ¶ 94). Even with two points under USSG § 2B2.1(b)(5) subtracted

from McCallum's offense level for each group, his total offense level would be 44, and that's after giving him credit for acceptance of responsibility and before adding any points under USSG § 4B1.5(b). The guideline range corresponding to an offense level of 43 (or higher) is life, so McCallum's guideline range is life regardless of these enhancements. Therefore, any error related to their application is harmless.

## II. McCallum's sentence was eminently reasonable.

A challenge to the substantive reasonableness of a sentence determines whether a court's sentence was reasonable or whether it abused its discretion when determining that the 18 § 3553(a) factors warranted a chosen sentence. *United States v. Ralston*, 110 F.4th 909, 919 (6th Cir. 2024). A sentence that is within the guideline range is presumptively reasonable. *Id.* at 923. A sentence is a "matter of reasoned discretion," and the review accorded to the district court is "highly deferential." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

McCallum claims that his sentence of 85 years in prison—which is 205 years below the applicable guideline range—is substantively unreasonable. He claims that the district court failed to consider his

lack of prior criminal record, his history of being abused, and the unlikelihood that he will recidivate. (McCallum Br. at 26–27).

The district court properly considered the § 3553 factors, specifically noting McCallum's claims of prior abuse and his relative lack of criminal record. (R. 157: Sent. Tr., 1156–57). The district court concluded that the need to protect the public was an important factor given the serious nature of the case and McCallum's lack of remorse. (*Id.*, 1158). The district court also considered the need to avoid disparities in sentences but differentiated this case given the more troubling nature of McCallum's offenses and character. (*Id.*, 1158–59).

It's not hard to see why. McCallum repeatedly tortured minors and produced large amounts of child pornography when doing so. He anally raped MV-1, threatened her with a gun, made her wear a strap-on dildo and have sex with a sex toy, created numerous sexually explicit images of her, and abused her for years. He referred to her as "wifey." (R. 133-1: Gov. Sent. Mem. Ex. A, 690). In addition to raping MV-2, McCallum produced sexually explicit images of himself rubbing his penis on her and penetrating her with his finger and objects when she was only six months old. (R. 131: PSR, 640, ¶ 36). He assaulted MV-3

and created a video of MV-3 performing oral sex on him and McCallum fondling MV-3's genitals when MV-3 was nine years old. (*Id.*, ¶ 37).

The district court considered McCallum's arguments for a lower sentence but came to a different conclusion given the totality of the circumstances. Indeed, even a much longer guideline sentence would have been reasonable given the depraved nature of McCallum's many offenses against multiple minor victims that spanned decades and his lack of remorse for his heinous crimes. McCallum's 85-year sentence should be upheld.

## Conclusion

The judgment should be affirmed.

Respectfully submitted,

Julie A. Beck
Acting United States Attorney

/s/ Christopher Rawsthorne
Christopher Rawsthorne
Assistant United States Attorney
Eastern District of Michigan
600 Church Street, Suite 200
Flint, MI 48502
(810) 766-5032
Christopher.Rawsthorne@usdoj.gov

Dated: March 21, 2025

**Certificate of Service**

I certify that on March 21, 2025, I caused this Brief for the United States to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of the filing to the following attorney of record:

Edward M. Heindel, hein234@earthlink.net

/s/ Christopher Rawsthorne
Christopher Rawsthorne

# Relevant District Court Documents

The United States of America designates as relevant these documents in the district court's electronic record, Eastern District of Michigan case number 21-cr-20088:

| Record No. | Document Description | Page ID Range |
|------------|----------------------|---------------|
| R. 77 | Second Superseding Indictment | 302–10 |
| R. 131 | Presentence Report | Sealed |
| R. 132 | Sentencing Memorandum | 663–70 |
| R. 133 | Government Sentencing Memorandum | 671–91 |
| R. 157 | Redacted Sentencing Transcript | Sealed |